FOLK v. SANDERS.

1. POSSESSION OF CHATTEL—PURCHASER FOR VALUE.—A person who purchases for value a horse from one in the possessson thereof, claiming it as his own under a bill of sale from the former owner, is protected from the claim of the former owner, the purchaser having paid full value and having no notice that such bill of sale was intended only as security.

Before WALLACE, J., Colleton, November, 1891.

Action by T. J. Folk against Clark Sanders. The bill of sale referred to in the opinion is not printed in the record, but the plaintiff testified that he had given to Bennett Brothers "a bill of

sale over this mare." He further testified that he had paid the debt secured by this bill of sale before Bennett Brothers took his mare, but while his payments exceeded his secured debt, he said that Bennett Brothers "claimed an open account"—amount not stated—and the receipts in evidence showed $40 paid on the "lien and bill of sale," and sixty-one 70–100 dollars, not specifically appropriated.

*Mr. C. C. Tracy*, for appellant.

*Mr. G. W. M. Williams*, contra.

September 9, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. In an action for claim and delivery tried before trial justice Griffin, the verdict of the jury was: "We find for the plaintiff the property in dispute, the value of which we find at ninety dollars." From this judgment the defendant, Clark Sanders, appealed to the Circuit Court on six grounds. The appeal came on to be heard before Judge Wallace, who affirmed the judgment of the trial justice. The defendant has appealed to this court upon six grounds: I. Because, it is respectfully submitted, that his honor erred in not holding that this defendant was a purchaser for value without any notice of any claim of plaintiff, and as such was entitled to be protected in his possession and purchase. II. Because, it is respectfully submitted, his honor erred in holding in effect by his order that one who executes an absolute bill of sale can maintain an action of claim and delivery against a purchaser from his vendee, and is not estopped by his own deed. III. Because, it is respectfully submitted, his honor erred in not holding that when Folk executed a bill of sale absolute upon its face to Bennett Brothers, he parted with his title and could not maintain an action of claim and delivery. IV. Because, it is respectfully submitted, that his honor erred in not holding that the bill of sale, absolute upon its face, could be construed as a mortgage only as between Folk and Bennett Brothers, and that a purchaser from Bennett Brothers was protected by such bill of sale, whether shown him or not, unless notice is brought home to him that the same was intended

as a security only. V. Because, it is respectfully submitted, that his honor erred in not holding that as the testimony adduced showed a doubt as to the full payment of all indebtedness by Folk to Bennett Brothers, this action could not be maintained without an accounting first had, which accounting required the presence of Bennett Brothers as parties. VI. Because, it is respectfully submitted, his honor erred in not holding that the only remedy of plaintiff was an action for an accounting against Bennett Brothers, the title vesting in them and only liable to be divested as between themselves and said plaintiff upon proof of payment in full of all indebtedness.

Before undertaking the decision of the matters embraced in this appeal, and as necessary to a correct apprehension of such matters, the main facts of the controversy, as shown by the "Case," should be stated. In 1889 the plaintiff Folk owned a horse, and desiring an advance of $100 in plantation supplies for that year, he executed a lien on all his crops of that year to Bennett Brothers to secure such advances, and as an additional security he executed a bill of sale to Bennett Brothers of his horse. On 21 September, 1889, he paid Bennett Brothers $40; on 3 October, 1889, he paid such firm $47; and on 31 October, 1889, he paid $14.70, aggregating $101.70, from his cotton crop. During the same year he contracted an unsecured account with said firm. The horse in question remained in the possession of the plaintiff Folk until some day in the month of January, 1890, at which time, during Folk's absence from home, Bennett Brothers took possession of such horse under the bill of sale. Folk endeavored to find the horse, but it was kept out of the way by Bennett Brothers, until finally such firm traded it to a person who sold it to the defendant, Clark Sanders, receiving $80 therefor. In July, 1890, Folk found the horse in Sanders's possession and brought his action against Sanders for claim and delivery. It is set out in the "Case," that at the trial before the trial justice, it was "admitted by counsel on both sides that Mr. Sanders bought the horse through Bennett's possession; that he paid valuable consideration for it, and had no notice of a third party's claim." The questions of law submitted here are substantially the same that were presented to Judge Wallace on the Circuit.

And it may be stated that we see no reason to pursue our inquiry beyond the questions raised by the first ground of appeal. Practically, that ground raises the question whether a man without any fault on his part, for a valuable consideration, without any notice of any claim of another, buys an article of personal property from one in possession of the same, should be allowed to avail himself of the doctrine of a purchaser for valuable consideration without notice. It seems to us that there should be but one answer to the question. Such a party should be so protected. It is useless to cite a single authority in support of such a plain proposition: To go a step further: in this case the plaintiff Folk executed a bill of sale, absolute on its face, of the horse in question. Thus by his own act, he placed his property in the power of Bennett Brothers, enabling them to deal with the world respecting the same as their property. No doubt he had rights as against Bennett Brothers touching this property, but not so as to any one else to whom he gave no notice of such rights, or who had no notice, actual or constructive, thereof. It follows, therefore, that the judgment of the Circuit Court is erroneous and must be reversed.

It is the judgment of this court, that the judgment of the Circuit Court herein be reversed, and the action is remitted to that court to enter a judgment sustaining the appeal from the judgment of the trial justice court, thereby reversing such judgment and providing for a dismissal of plaintiff's action therein.